UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SAMMY LEE ALLEN, JR.,

                Petitioner,                Case No. 1:21-cv-813

v.                                      Hon. Hala Y. Jarbou

GREGORY SKIPPER,

                Respondent.

_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

<u>Discussion</u>

## I.    Factual allegations

Petitioner Sammy Lee Allen, Jr. is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan.  On February 28, 2018, following a two-day jury trial in the Berrien County Circuit Court, Petitioner was convicted of delivery of between 50 and 449 grams of cocaine, second offense, in violation of Mich. Comp. Laws § 333.7401, felon in possession of a firearm and ammunition, in violation of Mich. Comp. Laws § 750.224f, and use of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b.[1]  On April 16, 2018, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to prison terms of 3 years, 10 months to 20 years for felon in possession of a firearm, 2 to 20 years for felon in possession of ammunition, and 16 years, 6 months to 40 years for delivery of cocaine.  The sentence for delivery of cocaine was to be served consecutively to a sentence of 2 years for felony-firearm.[2]

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> Berrien County police received a tip from a confidential informant that defendant was selling cocaine out of his home and vehicle and that he stored cocaine in the headliner of his sport utility vehicle (SUV).  Officers obtained a search warrant for the home on the basis of the tip.  Because the confidential informant had also stated that there were firearms in the home, officers surveilled it so that, for their own safety, they could execute the warrant when the home was unoccupied.  Officers were surveilling defendant's home on November 6, 2017 when defendant left the home in his SUV, and they observed defendant's vehicle make a turn without signaling.  The officers radioed to a patrol car, and the patrol car pulled the SUV over for the traffic violation.  During the traffic stop, Berrien

---

[1] Petitioner was also convicted of possession of marijuana, a misdemeanor.  (Pet., ECF No. 1, PageID.1.)  Petitioner has completed his sentence for that offense and, thus, is not in custody for that offense.

[2] It is possible the "felon in possession" sentences were also to be served consecutively to the felony-firearm sentence.  The MDOC's calculation of Petitioner's "Earliest Release Date" indicates that, at a minimum, the delivery sentence would be served consecutively to the felony-firearm sentence.  *See* https://mdocweb.state.mi.us/otis2/otis2profile. aspx?mdocNumber=243245 (visited September 22, 2021).

County Sheriff' s Deputy Richard Edgerle saw defendant "reach back towards the ceiling of the [SUV]."  Officers searched defendant's vehicle and found crack cocaine in the headliner, and defendant was arrested.  The officers interviewed defendant, and he informed them that there was a firearm and a small amount of marijuana in the home, but no additional cocaine.  The officers submitted a new search warrant affidavit that included information about the newly-discovered cocaine in defendant's vehicle and obtained a second search warrant for the home. When officers executed this search warrant, they discovered more cocaine, over $13,000 in cash, and a firearm in the home.

Before trial, defendant moved to suppress all evidence obtained from the search of his vehicle, as well as his subsequent admissions about the firearm and marijuana, arguing that the warrantless search of the vehicle was illegal and that his subsequent statements were the fruit of the poisonous tree.  After a hearing, the trial court denied defendant's motion, finding that the search of defendant's vehicle was authorized under the automobile exception to the warrant requirement.  After a two-day trial, defendant was convicted as described.

*People v. Allen*, No. 344207, 2019 WL 5197638, at *1 (Mich. Ct. App., Oct. 15, 2019) (footnote omitted).  "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)."  *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

Petitioner, with the assistance of counsel, appealed his convictions and his delivery sentence to the Michigan Court of Appeals raising the same three issues he raises in this habeas petition.  On October 15, 2019, the Michigan Court of Appeals rejected Petitioner's challenges and affirmed the trial court.  Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, again raising the same three issues.  (Pet., ECF No. 1, PageID.2–3.)  By order entered June 30, 2020, the supreme court denied leave to appeal.  *People v. Allen*, 944 N.W.2d 691 (Mich. 2020).  This timely petition followed.

The petition raises three grounds for relief, as follows:

I.    Petitioner's Fourth Amendment violation by the search of his van violated established Supreme Court law.

II.   The sentencing court abused its discretion and imposed a disproportionate sentence when it doubled [Petitioner's] guidelines range.

3

III.    Petitioner's constitutional right was violated by the trial court assessment of court costs under the Separation Clause.

(Pet., ECF No. 1, PageID.6–9.)

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is

4

limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Illegal search and seizure (habeas ground I)

Petitioner moved to suppress the items found during the search of his vehicle, as well as the items found subsequently at his home and his subsequent statements to police, because the initial search of his vehicle was illegal.  The court of appeals concluded the search fell within the "automobile exception" to the Fourth Amendment warrant requirement and, therefore, the items seized in the subsequent search and Petitioner's statements were not "fruit of the poisonous tree."  *People v. Allen*, 2019 WL 5197638, at *2–4.

6

Petitioner's claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also McQueen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims).  In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim.  *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

For the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism.  *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985).  If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error.  *Id.* at 824.

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard.  First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial.  Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures.  *See People v. Margelis*, 186 N.W. 488 (Mich. 1922).  After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment.  *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982).  Conse-

quently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down.  *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim).  The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error."  *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts showing that the state's mechanism has broken down.  Rather, it is clear that the Michigan courts gave Petitioner's Fourth Amendment claim full and proper consideration. Petitioner moved to suppress the search and its "fruits."  The trial court held a hearing and denied relief.  The Michigan Court of Appeals reviewed Petitioner's challenge to the validity of the search and determined that it lacked merit.  Petitioner applied for leave to appeal to the Michigan Supreme Court, which denied his application.  Therefore, even if this Court were to disagree with the determination of the Michigan courts, that disagreement would be insufficient to satisfy the second prong of the Sixth Circuit standard.  *Gilbert*, 763 F.2d at 824.

Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claim of illegal search and seizure is barred on habeas review.

### B.    Disproportionate sentence (habeas ground II)

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S.

8

63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

        Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).  Similarly, proportionality of a sentence to the offense and the offender is not a federal constitutional requirement; rather, it arises under state law.

        In *People v. Milbourn,* 461 N.W.2d 1 (Mich. 1990), the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9–11.  The "prescribed sentence range" identified in *Milbourn*, however, was not the minimum sentence range generated by statutory guidelines.  At the time *Milbourn* was decided, there were sentencing guidelines, but they were a creation of the courts. *See* McComb, *An overview of the second edition of the Michigan sentencing guidelines,* 67 Mich. B. J. 863, 864 (1988) (setting out the history of the development of sentencing guidelines in Michigan through 1988).

        In 1998, the Michigan Legislature enacted statutory sentencing guidelines.  Mich. Comp. Laws § 777.1 *et seq*.  The statutory guidelines permitted departures if there was a

"substantial and compelling reason for the departure . . . state[d] on the record . . . ."  Mich. Comp. Laws § 769.34(3).  The guidelines also effectively immunized from state-law the proportionality of minimum sentences that fell within the guidelines range.  Mich. Comp. Laws § 769.34(10) ("If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence.").  Because the guidelines were created with reference to the principle of proportionality, further scrutiny of the sentences generated by application of the guidelines was unnecessary.  *People v. Babcock*, 666 N.W.2d 231, 239–241 (Mich. 2003).  The *Babcock* court concluded that minimum sentences outside the guidelines range required a determination whether there was, indeed, a substantial and compelling reason to justify the departure.  *Id*. at 243–44.

In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court effectively stripped away the requirement that the trial court have a substantial and compelling reason for departing from the sentencing guideline because that requirement, in part, rendered the guidelines mandatory and called into question their constitutionality under the line of authority beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and continuing in *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).  *Lockridge*, 870 N.W.2d at 518, 520–21.  Without the "substantial and compelling reason" guidepost, there was no longer a standard by which to judge the propriety of departure sentences.  The *Lockridge* majority held that, going forward, departure sentences would be reviewed for "reasonableness."  *Id*. at 521.

The Michigan Supreme Court elaborated on the meaning of reasonableness in *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017).  *Steanhouse* based its definition of a

10

reasonable sentence on the definition of proportionality from *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990).  Nearly three decades later, the Michigan Supreme Court had come full circle:  a sentence departing from the guidelines was improper if it was disproportionate.

It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles.  *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] . . . essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus.").  Because this Court has no power to intervene on the basis of a perceived error of state law, *see Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41, Petitioner's proportionality claim, to the extent it is based on *Milbourn* and/or *Steanhouse,* is not cognizable in a habeas corpus action.

The same proportionality principles are not present in the United States Constitution's Eighth Amendment.  That is so despite the fact that the *Milbourn* opinion quotes *Weems v. United States*, 217 U.S. 349, 367 (1910):  "It is a 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'"  *Milbourn*, 461 N.W.2d at 9.  But the quote from *Weems* is somewhat misleading.  *Weems* was not an Eighth Amendment case.

11

At issue in *Weems* was not a sentence imposed by a state, or even the United States, but one imposed by the supreme court of the Philippines.  Mr. Weems' crime was making two false entries in a "wages paid" logbook relating to lighthouse services.  His punishment for that crime was significant:

> The minimum term of imprisonment is twelve years, and that, therefore, must be imposed for 'perverting the truth' in a single item of a public record, though there be no one injured, though there be no fraud or purpose of it, no gain or desire of it.  Twenty years is the maximum imprisonment, and that only can be imposed for the perversion of truth in every item of an officer's accounts, whatever be the time covered and whatever fraud it conceals or tends to conceal.  Between these two possible sentences, which seem to have no adaptable relation, or rather in the difference of eight years for the lowest possible offense and the highest possible, the courts below selected three years to add to the minimum of twelve years and a day for the falsification of two items of expenditure, amounting to the sums of 408 and 204 pesos.  And the fine and 'accessories' must be brought into view.  The fine was four thousand pesetas,—an excess also over the minimum.  The 'accessories' we have already defined.  We can now give graphic description of Weems's sentence and of the law under which it was imposed.  Let us confine it to the minimum degree of the law, for it is with the law that we are most concerned.  Its minimum degree is confinement in a penal institution for twelve years and one day, a chain at the ankle and wrist of the offender, hard and painful labor, no assistance from friend or relative, no marital authority or parental rights or rights of property, no participation even in the family council.  These parts of his penalty endure for the term of imprisonment.  From other parts there is no intermission.  His prison bars and chains are removed, it is true, after twelve years, but he goes from them to a perpetual limitation of his liberty.  He is forever kept under the shadow of his crime, forever kept within voice and view of the criminal magistrate, not being able to change his domicil without giving notice to the 'authority immediately in charge of his surveillance,' and without permission in writing.  He may not seek, even in other scenes and among other people, to retrieve his fall from rectitude.  Even that hope is taken from him, and he is subject to tormenting regulations that, if not so tangible as iron bars and stone walls, oppress as much by their continuity, and deprive of essential liberty.  No circumstance of degradation is omitted.  It may be that even the cruelty of pain is not omitted.  He must bear a chain night and day.  He is condemned to painful as well as hard labor.  What painful labor may mean we have no exact measure.  It must be something more than hard labor.  It may be hard labor pressed to the point of pain.

*Weems*, 217 U.S. at 365–66.

The measure of that punishment was not the United States Constitution.  In *Weems*, the United States Supreme Court was interpreting the "cruel and unusual" punishment clause of

the Bill of Rights of the Philippine islands.  Moreover, the "precept of justice" referenced was not one adopted by the United States Supreme Court or by any court of the islands; it was a belief attributed to persons "who have formed their conception of the relation of a state to even its offending citizens from the practice of the American commonwealths . . . ."  *Weems*, 217 U.S. at 367.

The United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.  His sentence does not present the extraordinary case that warrants deeper inquiry into reasonableness and proportionality or that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

13

Petitioner has failed to show that the court of appeals' rejection of his proportionality claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief.

### C.      Separation of powers (habeas ground III)

Petitioner complains that the trial judge violated the separation of powers doctrine when it assessed court costs under Mich. Comp. Laws § 769.1k.  As noted above, the extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle*, 502 U.S. at 62, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id*. at 67–68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id*. at 68.

The federal constitution calls for the separation of powers among the branches of the federal government.  In *Whalen v. United States*, 445 U.S. 684 (1980), the Supreme Court noted that "the doctrine of separation of powers embodied in the Federal Constitution is not mandatory on the States."  *Id*. at 689 n.4.  Therefore, it is not a federal constitutional issue if the state trial judge failed to maintain the separation of powers in connection with Petitioner's sentence and the assessment of costs.  At most it is a state-law issue.  *See Austin*, 213 F.3d at 302 ("[T]he separation of powers between a state trial judge and a state prosecutor is a matter of state law.").  A claim that the judge and prosecutor have not respected state-mandated separation "is not cognizable for purposes of federal habeas review . . . ."  *Id*.

The state court of appeals did not address Petitioner's "separation of powers" claim as a federal constitutional issue.  Instead, the court determined whether Petitioner's claim had any validity under the state constitution's Separation of Powers Clause.  *People v. Allen*, 2019 WL 5197638, at *5.  The court of appeals' determination that the assessment of costs did not run afoul

14

of the state constitution is binding on this Court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Petitioner has failed to show that the appellate court's rejection of his "separation of powers" claim is contrary to, or an unreasonable application of clearly established federal law. Accordingly, he is not entitled to habeas relief.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

15

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, for the same reasons the Court concludes that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court also concludes that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:   October 25, 2021                              /s/ Hala Y. Jarbou
                                                       HALA Y. JARBOU
                                                       UNITED STATES DISTRICT JUDGE